## The Inhabitants of SCITUATE *versus* The Inhabitants of HANOVER.

In November 1822, a pauper who was settled in Hanover, purchased certain real estate in Scituate, removed thither, and remained in the actual occupation of such real estate until 1827. In August 1825, he conveyed it in fee, and at the same time received from the grantee an instrument, not under seal, but signed by the grantee, which set forth, that the grantee had paid to the pauper the sum of $355·57, and had taken a deed of the land, and that the grantee had agreed to let the pauper " have the improvement, or sell, provided he should pay the above sum of money in three years *with interest.*" The *sum mentioned in this instrument w· s* not the full value of the real estate. *It seems,* that the transaction of August 1825, was not equivalent to a mortgage; but it was *held,* that the instrument given by the grantee to the pauper, operated as a declaration of trust by the grantee; and therefore that the conveyance by the pauper in August 1825, did not prevent his acquiring a *settlement in Scituate under St.* 1821, *c.* 94, § 2, which provides, that any person having an estate of inheritance or freehold in any town, and living on the same three years successively, shall thereby gain a settlement in such town

ASSUMPSIT for the support of John Mann, a pauper.

From an agreed statement of facts, it appeared, that the settlement of the pauper was in Hanover until November 2, 1822, when, having purchased certain real estate in Scituate, he removed thither, and remained in the actual occupation of such real estate until May 1, 1827 ; that on August 6, 1825, he conveyed it to Jairus Mann in fee, and at the same time received from the grantee an instrument, not under seal, in the following words :

" Know all men by these presents, that I, Jairus Mann, of Charlestown, have paid to John Mann, of Scituate, $355·57, and have taken a deed of his farm ; and I, the said Jairus, do agree to let the said John have the improvement, or sell, provided he shall pay the above sum of money in three years with interest."

On May 1, 1827, the pauper contracted for the sale of the real estate to Seth Curtis, and gave up this instrument to Jairus Mann ; and Jairus executed a quitclaim deed of the

land to Curtis, and Curtis paid to Jairus the sum mentioned in the instrument, with interest, and the residue of the purchase money, amounting to the sum of $250, was paid to the pauper.

If, upon these facts, the Court should be of opinion, that the pauper acquired a settlement in Scituate, the plaintiffs were to become nonsuit; otherwise the defendants were to be defaulted.

*Warren* and *Fogg*, for the plaintiffs, to the point, that the instrument given by Jairus Mann to the pauper was not a defeasance, cited *Erskine* v. *Townsend*, 2 Mass. R. 493; Co. Litt. 225 a; Com. Dig. *Pleader, O 1*; *Kelleran* v. *Brown*, 4 Mass. R. 443; 4 Dane's Abr. 154; 5 Dane's Abr. 358; *St.* 1785, c. 22.

*W. Baylies* and *Eddy*, for the defendants, to the point, that the transactions, between the pauper and Jairus Mann, in August 1825, were equivalent to a mortgage of the land, at least in equity, cited *Groton* v. *Boxborough*, 6 Mass. R. 50; *Kelleran* v. *Brown*, 4 Mass. R. 443; and to the point, that the instrument received by the pauper from Jairus Mann, operated as a declaration of trust, *Orleans* v. *Chatham*, 2 Pick. 29; *Barrell* v. *Joy*, 16 Mass. R. 221; *Flint* v. *Sheldon*, 13 Mass. R. 443.

Shaw C. J. delivered the opinion of the Court. It is conceded, that the pauper once had a settlement in Hanover, and it follows of course, that that settlement remains unless he has gained a settlement in some other town. No such acquisition of a new settlement is suggested, except one in Scituate, by the means stated in the report. The question then is, whether the pauper gained a settlement by having an estate of inheritance or freehold in Scituate and having lived thereon three years successively, within the meaning of *St.* 1821, c. 94, § 2.

It is conceded that John Mann, the pauper, purchased an estate of freehold, being in fact an estate in fee, in November 1822. Under this statute, the value of the estate is immaterial. This estate he held without incumbrance or change in the title, till August 1825, when he conveyed in fee and took back the instrument not under seal, recited in the case.

*Scituate*
*v.*
*Hanover.*

*Oct 23d.*

*May term*
*1835,*
*at Plymouth*

Under the agreement contained in this instrument he remained in possession till 1827, making much more than three years' uninterrupted possession ; so that the question is, what change was wrought in the state of his title, by the conveyance and agreement of August 1825.

We think it would be extremely difficult to establish this transaction as a mortgage, according to the rules which have been adopted upon that subject in this State.　But I have not thought it necessary to examine and review the authorities upon this subject, because the Court are agreed in opinion, that this instrument is a good declaration of trust, and that a trust estate is within the provision of the statute.

The instrument, though not under seal, being in writing and signed by the party who is by law enabled to declare such trust, is sufficient, within the provision of the statute upon that subject.　*St.* 1783, *c.* 37, § 3.

In construing a declaration or manifestation of trust, the Court will adopt a liberal construction, to carry into effect the intent of the parties.　*Barrell* v. *Joy*, 16 Mass. R. 221 ; *Flint* v. *Sheldon*, 13 Mass. R. 448.　This instrument recites that Jairus Mann had paid John Mann, $355·57, and taken a deed of his farm.　It is not that he had paid this sum for the estate, or as the price of the estate.　The word *paid*, in this instance, is not used technically, but rather as synonymously with *lent*, or *advanced*, and this is confirmed by the promise afterwards, if he shall pay the above sum in three years, with interest.　The grantor is to have the " *improvement*," that is, the use and occupation, the full rents and profits, without interest for three years.　He is to have the liberty to sell to whom he pleases, and to receive the whole proceeds to his own use, subject only to the proviso, to pay the $355·57 with interest, which, in effect, gives the declarant a lien on the estate for that amount.

These circumstances bring the case almost precisely within the one supposed by the judge, in delivering the opinion of the Court, in the case of *Flint* v. *Sheldon*, as one which would be available as a trust, if the declaration were in writing.

But the agreement, that John Mann should have liberty to

sell, provided he should pay the money in three years, is extremely significant of a trust, and can only be consistent with the hypothesis, that it was intended as a trust. The agreement not being under seal, did not of itself confer upon John Mann, a legal power to pass deeds of the estate; the effect of the provision is, that he shall be authorized to negotiate for a sale, and the implication is inevitable, that thereupon the declarant, who alone could give a deed, would execute one. It is therefore the declaration, that he holds the estate on that trust. Further, as the declarant is to have a fixed sum only, and that, as appears from other parts of the case, less than the value of the land, another conclusion is inevitable, namely, that John Mann, who was to make the sale, from whom the estate comes, was to have the surplus. I think another implication follows very strongly, namely, that, as upon the payment of a fixed sum, with interest, within a limited time, John Mann was to have the whole improvement till a sale, and the whole of the proceeds, upon a sale, which is in truth the whole beneficial interest in the estate, if John Mann himself had paid the sum and interest within the time limited, Jairus would convey the estate to him. Treating it as a covenant, as a legal contract, to be strictly construed, perhaps this would not be held to be within its terms; but taken as a declaration of trust, to be construed liberally, to have its effect upon the convenience of the party holding an estate thus derived and for such declared purpose, it is not easy to see how such a trust could be avoided. But I do not consider that the case depends upon that point; holding the estate in trust to permit the *cestui que trust* to take the rents, and to convey to whomsoever the *cestui que trust* shall appoint, upon payment of a fixed sum and interest, is a trust coextensive with the whole legal estate, and when executed must divest the whole legal estate of the trustee.

In the case of *Orleans v. Chatham*, 2 Pick. 29, it was held, that an estate of freehold or inheritance in trust, was sufficient to confer a settlement, within the provision of the pauper law. *St.* 1793, *c.* 34, § 2, 4th mode. It is true, that clause in the statute of 1793 has been repealed, and the statute above cited substituted for it. But the phraseology

Scituate
v.
Hanover.

"having an estate of inheritance or freehold in any town" is the same, and must have the same construction. One c r-cumstance which tends to satisfy us of the soundness of this conclusion is this ; that the statute of 1821, whilst it changes the old law, in dispensing with the yearly value of the freehold, which was always a difficult and troublesome question to settle, alters it in another important particular, by requiring not only that the person shall have such freehold, but shall live on the same three years successively. The consequence is, that in allowing trust estates to be within the statute, the *cestui que trusts* must be in the occupation ; the trustee and *cestui que trust* cannot be acquiring a settlement in virtue of the same freehold, at the same time, and therefore the danger of collusion and uncertainty, in the application of the statute as a practical rule by extending it to trust estates, is in a great measure cut off. [See Revised Stat. *c.* 45, § 1.]

The Court are therefore of opinion, that the pauper did acquire a settlement in the town of Scituate, that his settlement in Hanover thereupon ceased and determined, and that the plaintiffs are not entitled to recover.

*Plaintiffs nonsuit.*